**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TRICIA MEZZACAPPA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-4943** |
| | : | |
| **DR. DEBRA WILSON,** *et al.*, | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**SCHMEHL, J.  /s/ JLS**                                                    **JULY  27, 2022**

Currently before the Court is an Amended Complaint filed by Plaintiff Tricia

Mezzacappa, which raises damages claims pursuant to 42 U.S.C. § 1983 based on conditions in

which Mezzacappa was previously confined in the Lehigh County Jail ("LCJ").[1]  (ECF No. 4.)

For the following reasons, the Court will dismiss the Amended Complaint without prejudice for

failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[2]

---

[1] At the time she filed this lawsuit, Mezzacappa was serving a sentence on a probation violation at LCJ.  (*See* Compl. at 1; *see also Commonwealth v. Mezzacappa*, CP-48-CR-0002873-2019 (C.P. Northampton) (reflecting imposition of sentence on May 12, 2021 following probation violation hearing).)  She was released while her claims were pending.

[2] Mezzacappa filed her Amended Complaint before the Court had an opportunity to address her initial Complaint.  In an April 19, 2022 Memorandum and Order, the Court granted Mezzacappa leave to proceed *in forma pauperis* and directed her to filed one operative pleading so that the Court could consider all the claims she sought to raise.  (ECF Nos. 8 & 9.)  Mezzacappa was informed that if she failed to file a comprehensive second amended complaint, the Court would treat her Amended Complaint as the operative pleading and screen it pursuant to 28 U.S.C. § 1915(e).  (*Id.*)  In a May 27, 2022 Order, Mezzacappa was granted an extension of time to file a second amended complaint within thirty days and again informed that, if she failed to do so, the Court would screen her Amended Complaint.  (ECF No. 11.)  Since Mezzacappa has not filed a second amended complaint, the Court will screen her Amended Complaint in accordance with its prior orders and authority under § 1915(e).

I.      **FACTUAL ALLEGATIONS**[3]

Mezzacappa's Amended Complaint names the following Defendants:  (1) PrimeCare Medical, Inc., the medical contractor at LCJ; (2) "PrimeCare Medical Nurse Jane Does 1-5"; (3) "PrimeCare Medical P.A. Megan";[4] and (4) "Lehigh County Corrections Officers Jane Does 1-5, John Does 1-5."  (Am. Compl. at 1.)[5]  Mezzacappa's claims are based on assorted conditions in which she was confined at LCJ.  She has pled her allegations in a list of conditions and, next to each allegation, she lists those Defendants whom she apparently claims is responsible for each condition or incident.

Mezzacappa alleges that, after she filed this lawsuit on November 8, 2021, she "was disciplined after reporting inmate threat/harassment/stealing my food as retaliation for filing lawsuit."  (*Id.* at 4.)  While in disciplinary segregation, Mezzacappa experienced a "cardiac event" that caused her to hit her head and fall to the floor of her cell.  (*Id.*)  She claims her calls for help were ignored for hours until someone called a "Code Blue 4C2" to which "a number of Jane/John Does responded."  (*Id.*)  Mezzacappa claims that she was "suffocated by a hand over [her] mouth/nose with ammonia salts which exacerbated [her] Barrett Esophagus condition."  (*Id.*)  Additionally, her wrists were injured when she was subjected to a "'wrist-forearm' move which bent both wrists to touch forearms, and is used for persons resisting arrest to get them into handcuffs."  (*Id.* at 4-5.)  She was then forced into a "standing position," mocked, and thrown

---

[3] The following allegations are taken from Mezzacappa's Amended Complaint.

[4] This Defendant's name is also, at times, spelled "Meghan."  (*See* Am. Compl. at 5.)  The Court adopts the spelling in the caption for consistency.

[5] The Court adopts the pagination supplied by the CM/ECF docketing system.

back onto the floor.  (*Id.* at 5.)  Mezzacappa alleges that "everyone"[6] left without assessing her or giving her medication for the pain.  (*Id.*)

Hours later, Mezzacappa alleges that, while she was still on the floor, a nurse called her a "faker" and then dug her fingers into Mezzacappa's left breast, causing pain, swelling, and bruising.  (*Id.*)  She also claims that the nurse hit her face "numerous times" and poked her in the eyes.  (*Id.*)  Although only one nurse is discussed in allegations describing this event, Mezzacappa attributes it to "Primecare and Jane Does 1-5."  (*Id.*)

Thereafter, a Physician's Assistant named Megan told Mezzacappa to sit up and that she was "wasting [her] time."  (*Id.*)  When Mezzacappa told Megan to leave, she allegedly reacted by "implementing a punitive in camera cell" that Mezzacappa alleges violated her privacy rights. (*Id.*)  Mezzacappa claims she was "forced into this cell for no reason, without any self harm behaviors."  (*Id.*)

Mezzacappa alleges that "during all times" the "corrections staff" deprived her of:  (1) the law library; (2) access to the courts due to the confiscation of her "mail supplies"; (3) Motrin that she purchased from the commissary for "pain/swelling relief for Barrett Esophagus/back & neck pain"; (4) five consecutive meals; (5) "basic hygiene supplies" including a toothbrush, toothpaste, soap and shampoo; and (6) a cup "to hold water."  (*Id.*)  Mezzacappa also claims that she was forced by "corrections staff" to wear soiled clothes and sleep in soiled bedding, and that corrections officers "mocked" her medical condition and refused to tell her why she was being disciplined.  (*Id.*)  She further alleges that, while in disciplinary segregation, she was denied

---

[6] The allegations about this event are attributed to "all named Defendants" (Am. Compl. at 4) and "Prime Care and Jane Does 1-5." (*Id.* at 5.)

Motrin that she requested from a nurse.[7]  (*Id.* at 7.)  Mezzacappa contends that she suffers from numerous conditions and injuries, and that she experienced deliberate indifference to her medical needs related to those conditions.  (*Id.*)  She alleges that PrimeCare "violated its own policies" in connection with its handling of the cardiac event and treatment of her pain, and ignored her request for a liquid diet (apparently because of jaw injuries that make it difficult for Mezzacappa to chew food).  (*Id.* at 7.)  Mezzacappa seeks damages for violation of her constitutional rights based on these events.  (*Id.* at 4.)

## II.    STANDARD OF REVIEW

As Mezzacappa is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678. As Mezzacappa is proceeding *pro se*, the Court construes her allegations liberally.  *Vogt v.*

---

[7] It is unclear whether this allegation is attributed to "Jane Doe #1," Megan, or both.  (Am. Compl. at 7.)

*Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  A private corporation under contract to provide services to a jail, such as PrimeCare, may be liable under § 1983 if that entity's policies or customs caused the alleged constitutional violation.  *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (acknowledging that entity contracted to perform medical services for county jail is state actor for purposes of § 1983).  To assert a plausible § 1983 claim against such an entity, the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).

Almost all of Mezzacappa's claims are not specifically or meaningfully tied to the individual Defendants in a manner that would permit either the Court or the Defendants to

understand the nature of the claims against them.  Rather, most of Mezzacappa's allegations are

pled in the collective, meaning that she attributes a wide scope of conduct to a group of

Defendants (or, at times, "all" Defendants) without specifically describing the nature of those

Defendants' involvement.  Such allegations are insufficient to state a constitutional claim.[8]  *See*

---

[8] Several of Mezzacappa's claims also fail on their merits.  First, although Mezzacappa claims that she was disciplined in "retaliation" for filing a lawsuit, she has not alleged sufficient facts to support a plausible conclusion that the discipline she received was motivated by retaliation.  *See, e.g.*, *Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation.").  Second, Mezzacappa claims she was denied access to the courts, but she has not alleged any actual injury, such as in the form of a forfeited claim, that she claims to have suffered as a result of the denial of access.  *See, e.g.*, *O'Connell v. Williams*, 241 F. App'x 55, 57 (3d Cir. 2007) (*per curiam*) (holding that "[t]o state a claim for denial of access to courts based on an inadequate law library, a litigant must show with specificity that he was prevented from litigating a nonfrivolous underlying claim due to the allegedly inadequate facilities, and must seek a remedy for the denial of access which would not be available in another suit").  Third, while denial of hygiene materials and clean facilities may rise to the level of a constitutional violation, that is only so when the conditions are objectively serious and prison officials have acted with deliberate indifference.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Although Mezzacappa could possibly have a claim, she has generally failed to allege facts about the extent, duration, or harm caused by the deprivations at issue, nor, as noted above, has she specifically alleged how each Defendant acted with deliberate indifference to her health or safety on any given occasion.  *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *Bell v. Wolfish*, 441 U.S. 520, 542 (1979) (indicating that conditions must result in "genuine privations and hardship over an extended period of time" to violate the Constitution).  Fourth, allegations of mocking, on their own, do not equate to an independent constitutional violation.  *See, e.g.*, *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").  Fifth, in general, prisoners have limited privacy rights while incarcerated and it is unclear why Mezzacappa believes the "punitive" cell that Megan placed her in violated her right to privacy.  In other words, this allegation is undeveloped and unclear.  Sixth, Mezzacappa's allegations do not support a plausible inference that she was subjected to an atypical or significant hardship in connection with the discipline she experienced, so as to give rise to plausible due process claim.  *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (holding that for convicted prisoners, "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest.") (quoting *Sandin v. Connor*, 515 U.S. 472, 486 (1995)).

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *see also Lawal v. McDonald*, 546 F. App' x 107, 113-14 (3d Cir. 2014) (pleading that relied on "repeated and collective use of the word 'Defendants'" was ambiguous about each Defendant's role in the events giving rise to plaintiff's claims).  With regard to PrimeCare, Mezzacappa has failed to identify a policy or custom of PrimeCare that led to the violation of her constitutional rights.  Rather, she alleges that the issues with the medical care she received reflected PrimeCare's *failure* to follow certain unspecified policies (*see* Am. Compl. at 7), and her pleading does not support any widespread customs or other failures that would support any other basis for PrimeCare's liability here.

Despite these pleading flaws, the Court can discern one claim that warrants further discussion.  Mezzacappa alleges that "a nurse" dug her fingers into Mezzacappa's breast, which caused pain, swelling, and bruising, hit her in the face, and poked her in the eyes.  (*Id.* at 5.)  This would appear to assert a claim for excessive force against the nurse involved.  The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency.  *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment." *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  The inquiry is driven by the extent of the force and the circumstances in which it is applied.  *See Smith*, 293 F.3d at 648-49.  Although Mezzacappa's allegations suggest a basis for an excessive force claim against the nurse who grabbed her breast, hit her face, and poked her eyes (assuming this is the same person), her allegation is also, confusingly, attributed to PrimeCare and "Jane Does 1-5."  (*Id.*)  However,

even reading the claim as having been pled against one nurse, it is unclear who this nurse is or how the Court could direct service of the claim upon her without any identifying information.

Given the pleading defects discussed above, the Court will dismiss Mezzacappa's Complaint without prejudice to her filing an amended complaint that more clearly specifies how each Defendant was involved in the claimed violations of Mezzacappa's rights.  Mezzacappa is encouraged to provide as much identifying information as possible about the John and Jane Doe Defendants to facilitate service in the event she pleads a plausible claim and to clearly indicate how, for each constitutional violation, a given Defendant's acts or omissions caused the violation of her rights.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Mezzacappa's Amended Complaint without prejudice.  Mezzacappa will be given an opportunity to file a second amended complaint to "flesh out [her] allegations by . . . explaining in the [second] amended complaint the 'who, what, where, when and why' of [her] claim."  *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).  As noted above, any second amended complaint should clearly describe the factual basis for Mezzacappa's claims against the relevant defendants and explain how each defendant was involved in the alleged denial of her constitutional rights.  An Order follows, which provides further instruction as to amendment.

BY THE COURT:


**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**